**KOLLER LAW LLC**
David M. Koller (037082002)                                        *Attorney for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: 215-545-8917
davidk@kollerlawfirm.com

## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SANJIV AMIN**<br>**21 Woodland Way**<br>**Dayton, NJ 08810**<br>            **Plaintiff,**<br><br>        v.<br><br>**AUTOZONE, INC.**<br>**144 Park Place E**<br>**Wood-Ridge, NJ 07075**<br><br>**123 S. Front Street**<br>**Memphis, TN 38103**<br>            **Defendant.** | **Civil Action No.**<br><br>**Complaint and Jury Demand** |

## COMPLAINT

Plaintiff Sanjiv Amin, through his counsel, Koller Law, by way of Complaint against

Defendant AutoZone, Inc., hereby says:

### IDENTIFICATION OF THE PARTIES

1.   Plaintiff is Sanjiv Amin (hereinafter "Plaintiff"), an adult individual who is domiciled in

the state of New Jersey at 21 Woodland Way, Dayton, New Jersey 08810.

2.   Defendant AutoZone, Inc. is a retailer of aftermarket automotive parts and accessories

with an office and conducting business at 144 Park Place E, Wood-Ridge, NJ 07075 and a

corporate headquarters located at 123 S Front Street, Memphis, Tennessee 38103.

3.  AutoZone, Inc. is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

## JURISDICTION AND VENUE

4.  The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

5.  Jurisdiction and venue are proper in this Court as facts and circumstances that give rise to this Complaint occurred in the State of New Jersey.

## MATERIAL FACTS

6.  Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7.  In March 2012, Defendant hired Plaintiff in the position of Maintenance Supervisor.

8.  Plaintiff was well qualified for his position and performed well.

9.  Since the start of Plaintiff's employment, Michael Hunter, Maintenance Manager, forced Plaintiff to enter 49.59 hours for every week that he worked even when he worked more.

10. On average, Plaintiff worked between 15 and 60 minutes of overtime per week that Mr. Hunter refused to compensate him for.

11. In early 2015, Plaintiff noticed that Mr. Hunter was creating work orders for vendors for work that was never ordered, and then was submitting those work orders for payment.

12. Plaintiff reasonably believed that this conduct was a violation of the law, fraudulent, or criminal.

13. In or around June 2015, Plaintiff notified Steve McClanahan, Director of Store Maintenance and Set Up, via email that he believed Mr. Hunter was creating fabricated work orders and then authorizing payment on those work orders.

2

14. Plaintiff also attached the work orders Mr. Hunter entered that Plaintiff believed were fabricated.

15. Approximately one (1) week later, Mr. McClanahan contacted Plaintiff on the phone and informed him to contact Chad Mackiewicz, Divisional Loss Prevention Manager, regarding Mr. Hunter creating fabricated work orders.

16. Plaintiff followed Mr. McClanahan's instructions and emailed Mr. Mackiewicz the work orders that he believed were fabricated that had Mr. Hunter submitted.

17. However, Mr. Mackiewicz did not respond to Plaintiff.

18. In or around the middle of August 2015, Plaintiff met Mr. Mackiewicz by chance when Mr. Mackiewcziz was training Loss Prevention personnel at Defendant's location at 509 Washington Avenue, Bellville, NJ 07109.

19. Mr. Mackiewicz stated to Plaintiff that he could not look into the matter but, instructed Plaintiff to meet with Tom Hardy, Regional Loss Prevention Manager.

20. On August 25 2015, Plaintiff met with Mr. Hardy at a Hampton Inn located at 102-40 Ditmars Boulevard, East Elmhurst, NY 11369 to discuss the fabricated work orders.

21. Plaintiff provided Mr. Hardy with the information concerning Mr. Hunter's fabricated work orders and the work order numbers that he should investigate.

22. Mr. Hardy noted Plaintiff's information and he informed Plaintiff that he would investigate Plaintiff's concerns into Mr. Hunter's fabricated work orders.

23. In or around November 2015, Plaintiff received a call from Jim Rice, Maintenance Support Center Manager, and David Cooper, Senior Maintenance Manager.

24. Mr. Rice and Mr. Cooper informed Plaintiff that there was nothing wrong with Mr. Hunter's work orders.

3

25. Mr. Rice and Mr. Cooper stated further to Plaintiff that he should not have contacted Mr. McClanahan and to not contact him again in the future.

26. Mr. Cooper instructed Plaintiff to contact him if he had issues in the future.

27. In or around January 2016, Mr. Hunter's behavior towards Plaintiff changed.

28. Mr. Hunter was increasingly irate with Plaintiff and was unreasonably critical of Plaintiff's work product.

29. Plaintiff asked Mr. Hunter what caused the change in his treatment of Plaintiff, but Mr. Hunter did not respond.

30. Plaintiff believed that Mr. Hunter's change in behavior was in retaliation for Plaintiff reporting him.

31. Mr. Hunter did not pay Plaintiff for the pay period of May 8, 2016 to May 21, 2016.

32. However, Plaintiff did not complain to Human Resources after seeing how Defendant did not discipline Mr. Hunter for the fabricated work orders.

33. Mr. Hunter did not pay Plaintiff properly for his work week of August 8 to August 12, 2016.

34. Mr. Hunter deducted 19 hours of Plaintiff's regular time and 10 hours of Plaintiff's overtime.

35. Again, Plaintiff did not complain to Human Resources after seeing how Defendant did not discipline Mr. Hunter for the fabricated work orders.

36. Shortly afterwards, in August 2016, Mr. Hunter issued Plaintiff a Performance Improvement Plan ("PIP").

37. Mr. Hunter informed Plaintiff that the reason for the PIP was that Plaintiff was "not doing things right."

38. However, when Plaintiff asked Mr. Hunter what his alleged performance deficiencies were, Mr. Hunter refused to provide him with specifics.

39. On September 22, 2016, Mr. Hunter called Plaintiff to meet with him at Defendant's location at 561 Route 1 South, Edison, NJ 08817.

40. When Plaintiff arrived at Defendant's location later that day, he met with Mr. Hunter and Anthony Bombrio, District Manager.

41. Mr. Hunter then terminated Plaintiff for alleged performance deficiencies.

42. However, Plaintiff did not have any performance deficiencies.

43. It is Plaintiff's position that he was terminated in retaliation for reporting Mr. Hunter's work orders that he believed to be fabricated and was not compensated correctly.

**COUNT I**
**CONSCIENTIOUS EMPLOYEE PROTECTION ACT VIOLATIONS**
**N.J. Stat. § 34:19-1 *et seq.***

44. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

45. The Conscientious Employee Protection Act ("CEPA") makes it illegal to take any retaliatory action against an employee because the employee, *inter alia*, objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, . . . including any violation involving deception of, or misrepresentation to, any shareholder, investor, . . . [or] customer . . . ; [or]
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, . . . [ or] customer . . . .

N.J. Stat. § 34:19-3(c)(1)-(2).

46. Retaliatory action," under the statute, means "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms or conditions of employment." N.J. Stat. § 34:19-2(e).

5

47. Plaintiff is an employee within the meaning of CEPA. N.J. Stat. § 34:19-2(b).

48. Defendant is an employer within the meaning of CEPA. N.J. Stat. § 34:19-2(a).

49. Plaintiff objected to and refused to participate in an activity, policy or practice which he reasonably believed was in violation of the law and/or was fraudulent, criminal, deceptive, and/or a misrepresentation to a shareholder, investor, and/or customer.

50. As a result of Plaintiff's objection to Defendant's policy and/or him refusal to participate in Defendant's policy, Defendant suspended Plaintiff.

51. As a result of Plaintiff's objection to Defendant's policy and/or him refusal to participate in Defendant's policy, Defendant terminated Plaintiff.

52. As a result of Plaintiff's objection to Defendant's policy and/or him refusal to participate in Defendant's policy, Defendant attempted to interfere with Plaintiff's ability to receive unemployment compensation.

53. As a result of Defendant's acts in violation of CEPA, Plaintiff suffered adverse employment actions causing him harm.

**WHEREFORE**, Plaintiff, Sanjiv Amin, requests that the Court grant him the relief against Defendant, AutoZone, Inc., set forth in the Prayer for Relief clause, *infra*.

## COUNT II
## FAIR LABOR STANDARDS ACT VIOLATIONS

54. The foregoing paragraphs incorporated by reference herein as if the same were set forth at length.

55. Defendant employed Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

56. Defendant, as outlined more fully above, willfully refused to pay Plaintiff proper wages

including overtime, in violation of 29 U.S.C. §§ 206 (a), (f) and the U.S. Department of Labor regulations.

**WHEREFORE**, Plaintiff, Sanjiv Amin, requests that the Court grant him the relief against Defendant, AutoZone, Inc., set forth in the Prayer for Relief clause, *infra*.

## COUNT III
## WAGE PAYMENT AND COLLECTION LAW

57. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth fully at length herein.

58. Plaintiff was hired as an employee by Defendant.

59. Defendant refused to pay Plaintiff the proper amount that he is owed.

**WHEREFORE**, Plaintiff, Sanjiv Amin, requests that the Court grant him the relief against Defendant, AutoZone, Inc., set forth in the Prayer for Relief clause, *infra*.

## COUNT IV
## UNJUST ENRICHMENT

60. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth fully at length herein.

61. Plaintiff rendered services as a Maintenance Supervisor to Defendant in expectation of compensation for such services.

62. Defendant accepted these services and, in turn, failed to compensate Plaintiff for the fair market value of his services.

63. From at least March 2012 through September 22, 2016, Defendant accepted service from Plaintiff for which it failed to compensate Plaintiff.

64. Defendant has been unjustly enriched at the expense of Plaintiff.

65. As a direct and proximate result of these actions, Plaintiff has sustained damages to be

7

determined at trial.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

    **WHEREFORE**, Plaintiff, Sanjiv Amin, requests that the Court grant him the following relief against Defendant, AutoZone, Inc.:

a) Damages for past and future monetary losses as a result of Defendant's wrongful termination;

b) Compensatory damages;

c) Punitive damages;

d) Liquidated damages;

e) Emotional pain and suffering;

f) Reasonable attorneys' fees;

g) Recoverable costs;

h) Pre and post judgment interest;

i) An allowance to compensate for negative tax consequences;

j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited to, the pre-textual reasons cited for his adverse actions, disciplines, and termination; and

k) Awarding any/all other extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder.

Respectfully Submitted,

KOLLER LAW LLC

Dated: September 22, 2017

David M. Koller, Esq.
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
(t) 215-545-8917
(f) 215-575-0826
davidk@kollerlawfirm.com
*Attorney for Plaintiff*

9